Harding, representing TAMI Briscoe, the appellant. I'd like to start this morning with a hypothetical based on the trial court's footnote at record page 2655, where the trial court said that navigating the FGT plan was like wading through James Joyce's Ulysses, and that there was a need to cross-reference pages that created confusion and resulted in reading sections in isolation. So I'd like you to assume that I tell my reading group that they're going to have to read Ulysses next month, but I tell them, don't worry, because I'm going to provide you with a summary Ulysses description, and that could be something as pedestrian as cliff notes. And actually, that might be a good example, because ERISA requires that a summary plan description be written in language that's understandable by the average plan participant. And you can see those requirements at 29 U.S.C. 1022. Now, here's a variation on that. Suppose that my summary Ulysses description is simply a second copy of Ulysses, an identical verbatim copy. That's what happened in the Kohler case, and the Kohler case decided that when reading the certificate of coverage as a plan summary, it had to resolve the ambiguities in favor of the plan participant. Kohler noted that this problem was created by the insurer who made the, quote, curious decision, unquote, to use identical language in the plan in the plan summary. One more variation. Suppose the summary Ulysses description contained information about James Joyce, the publication date of the novel, the history of the pornography litigation over the novel, but when it came to the part where cliff notes would summarize each chapter and tell you who the characters were and give you synopses, it simply said, see Ulysses. That's what happened in this case, what MetLife did in what appears to be their summary plan description, the section marked ERISA information. They said your MetLife certificate includes a detailed description of the insurance provided by MetLife under the plan. This violates not only ERISA, it violates basic logic. A summary cannot be identical and coextensive with the document it's intended to summarize. Ulysses cannot be a summary of Ulysses. And it's also — and ERISA does — is very careful to require that every plan participant be provided with a description or summary of the benefits and that it must identify the circumstances in which denial, loss, forfeiture, et cetera, of benefits is provided. Roberts. Is this going to an ambiguity argument? Or is — I thought the essence of your argument, cliff notes aside or everything, was that even though the — there was no active at work, the deeming clause that says accrued vacation pay deems it to still be work was your argument. Well, I think that that is — that is the argument, but I think what —  So if that's the argument, I guess the first question presented in a footnote in their brief is that you didn't present that to the plan administrator. We didn't present the — well, we dispute that. Okay. Well, just what's the best record site for where your argument to us that accrued vacation pay extends the time, the June check contemplated we add those days. Where did you present that to them? I would look at their — the second denial letter where they reference the — where they reference the two paychecks, they reference the fact that the checks included pay for vacation pay, and yet they don't address the argument.  Well, I think that in — I think we've made that argument in our second — in our second appeal level. We've certainly argued about the — about the contents, about the fact that there was vacation pay, and that was — came back and forth. They cited a letter from a Mr. Brigandy who said that this vacation pay was not for this. So they have a responsibility to know their own plan terms. Their plan terms clearly provided that vacation pay or vacation could be considered  when a beneficiary presents to them evidence of vacation pay as part of it. I don't know that the beneficiary has to write a long brief on this. This is supposed to be an informal process. In fact, I think a lot of the courts that have looked at this have said that, you know, if the evidence is there, there's no issue preclusion. Well, Williams says that. If the evidence is there, where — again, I'm just going to ask you for a record cite — where was it represented to him that the vacation accrued would extend his termination date? Well — Where in the record do we have anything like Williams? Well, you know, I think certainly the — you know, the plan itself has — No, I'm not asking the plan. Because in Williams, the plan gets interpreted that way because there's an affidavit saying — right? Correct. What do we have that's here like that? Well, you know, unfortunately, you know, Mr. Briscoe died unexpectedly, and he never got to get asked that question, and that's almost always the situation in a life insurance case. So I don't know that we're claiming here that there's a — was a misrepresentation made to him or a failure to give him certain information other than in the plan itself. And if you look at the last part of Signa Via Mara, the Court talks about these information-related deficiencies being not necessarily requiring reliance, if that's what you're asking me, whether or not there's — There's nothing in the plan that equates accrued but unused vacation pay with extending the term or term of employment. There is the phrase policyholder approved. And what better way for a policyholder to approve vacation than to pay for it? Well, it's paid for because it's accrued, but it's not used. It doesn't extend the time when he's there under the supervision of the employer. Well, I don't think the policy has the word used in it either. I think — It has the phrase time off, and you aren't — Well — You aren't getting time off if you — Yeah, well, I think — let me give you an example on that. Let's suppose instead of dying after his last day at work, Mr. Briscoe had died over the weekend prior to his last day at work. He would be covered then because he was off coverage. What's the difference between pre-termination vacation and post-termination vacation? Those four days of pay should have to be applied somewhere. And the most logical place to apply them is the next four days after his last day at work. There's no nexus in the plan or in any case law between unused but paid for vacation and actual continuation of employment. I think the plan says that — again, the plan says policyholder approved vacation. That's all it tells us. And that policyholder approved vacation, I mean, again, it was approved. It was approved for purposes of payment, not for anything about continued employment, but beyond the date that the deceased had picked for his retirement. Well, he didn't pick it for his retirement. He was discharged. He was fired, right? He was discharged. Yeah. Part of a layoff. I mean, it wasn't for a cause. Again, I think the phrase policyholder approved vacation should be broad enough. And a number of the cases do that. In the Page case, it's very clear there that they added 22 days of accrued vacation to the last day at work. Mr. Page didn't take that vacation. They added accrued time. They did that in the Glodden case. They added accrued time and allowed that to be applied after whatever the cutoff date was. I was elected the employer to do that. Well, you know, in some of those cases, in the Page case, it's not clear because there is — That's the Southern District of Ohio case. Correct. Correct. It's not clear, but it appears to me that that was part of the plan. It was one of two things. It was either what you're looking for, explicit language saying that accrued vacation time can be considered policyholder approved vacation, or it was the way that the administrator read the plan. And we think here the administrator should have read this plan to read policyholder approved vacation to be time actively at work and to extend the date that Mr. Briscoe was employed. But how can you be actively at work if you've already been fired? You're not adding on a period of employment. It's just accrued vacation time. I think that goes back to the word deemed. I mean, this is a legal fiction. The employee who is off work on the weekend, he's not actively at work, but he is deemed to be actively at work. The employee who is on vacation is not literally actively at work. He is deemed to be actively at work, and we think that that phrase should be sufficient, should also be read to deem Mr. Briscoe's vacation time to be time spent actively at work. I think I'll save the rest of my time. Thank you. Good morning. May it please the Court, I'm Clifford Scott, Metropolitan Life Insurance Company. I have to say it's great to be back in my hometown. MetLife was correct in its denying appellant's claim for benefits under the terms of the plan. There is substantial evidence in the record upon which MetLife can rely that on Wednesday, May 16, 2012, this evidence provided by the employer, a fiduciary under the plan, that the ZDN was terminated, involuntary terminated, that the premium payments ended, and that the insurance coverage ended. He died more than 31 days after that date. MetLife can rely upon the employer, who's a fiduciary under the plan, this A1B claim for benefits against MetLife, not a breach of fiduciary duty claim. The employer was in the action, but has been settled out. The dispute, there's no dispute when the decedent's employment terminated. The plan states clearly that your coverage ends the date the employment terminates. If there were evidence in the record saying that he'd been told, you'll stay on the books for a while longer, then we would have Williams and at least ambiguity. Do you agree with that? If there was evidence in the record. The employer's statement — Is that how you distinguish Williams? I'm sorry? Is that how you distinguish Williams? Well, the employer's statement specifically that was executed more than a year later, more than a year. The gentleman was terminated on May 12th, on May 16, 2012. And the last paycheck was a retroactive vacation payout. Over a year later, the employer certified on June 27th, 2013, at the record at 2153 and 2163, two pages, that the employment had ended, the premiums had ended, and that the insurance coverage had ended. Moreover — That's what I'm asking, because they rely heavily on this Southern District of Ohio District Court case and R. Williams case. But I don't think you discussed those at all. You stated that their argument was purely the language of the deeming clause, but they do rely heavily on the logic of those two cases. So, really, I'd just love you to address cases you chose not to address that they'd argued. Because here the facts are there are multiple pieces of evidence in the record, post-vacation payout, that show that the employer viewed this as a vacation payout. There's a terminated letter on — a record at 2207, when the employer lists that you were terminated in employment on May 16, 2012. The letter is May 23rd, 2012, and stating these benefits will continue to the end of the month, including to medical — So that distinguishes Williams. Because, yes, it's very — How does it distinguish the Ohio case? Because here the employer told us, told MetLife, not us, not me, told MetLife that the employment had ended, had terminated. The vacation payout doesn't change the date of the termination. The language they're focusing on is, yes, of course he wasn't still actively performing anything. But then the language goes on to say, but he will be deemed to do so if he's at a weekend or on a policyholder-approved vacation. So the argument — These are two separate contingencies. One contingency is you're terminated. If you're terminated — All of it. Terminated. It's over. Done. Thank you very much. You're done. He was involuntarily terminated. The other contingency could be of situations where you're on a leave of absence.  You're not actually terminated. But the actively at work definition means if you're not actively at work, you can be deemed as being terminated. Nothing within that definition says that if you're actively at work, you're deemed to be not terminated or you're deemed to be employed. Why aren't you pressing that we can't consider this because they didn't present it to the plaintiff? Is it because they did sufficiently raise it or you think you stipulated to it because you just reduced that to a footnote? The court — it was not addressed administratively. The beneficiary made a claim. It was denied. The beneficiary sued later. MetLife agreed to hear the claim again, even though it was late, to hear an appeal. MetLife heard the appeal. The case was stayed. Then we went on. In the papers below, in the district court, the attorney raised the issue of the policyholder-approved vacation, which the court addressed. The court addressed it correctly. There wouldn't be a reason to come back and, like, remand it to the administrator because we'd get to the same result. The plan administrator and the plan sponsor and the employer clearly stated a year-plus later that the employee had been terminated. The terms of the plan — the idea that policyholder-approved vacation would somehow resurrect or revive employment, as this Court knows — I guess I'm asking you whether, if it's a jurisdictional threshold, and I'm not sure whether it is or isn't, we couldn't reach it if it weren't presented — if they hadn't exhausted the issue in front of the plan administrator. Maybe it's not a jurisdictional issue. Not a jurisdictional issue because the Court here, you would — I would imagine what you would say is, well, should we remand it? But if it's futile, it doesn't make sense to remand it. On the record, it would be futile. There would be no reason to do it. The record is clear, not created at the moment of termination only, but a termination a couple of weeks later, a year later. There was also a follow-up letter from the employer at 2276 saying that you had been — the gentleman had been terminated involuntarily. And as this Court knows, sometimes employees can have a year or more accrued vacation at the time of their termination. And that would create a situation where you could say, somebody on a Friday, June 30th is — you're fired. Then, oh, Saturday and Sunday, well, that's a weekend. Then you've got the Fourth of July week as a business closure. Oh, and then I have a year-and-a-week vacation, so I'm really employed. It's still — you know, I still have coverage. It's not designed for — Well, isn't it a fact that accrued but unused vacation is merely a factor in calculating the final check? Exactly. It has nothing in the plan, nothing in the plan administrator's discretion that says because there is — or any time there is accrued vacation, that adds to the term despite the fact that it was terminated earlier. Correct. This was the subsequent payout of accrued vacation pay. It was not a policyholder-approved vacation. This was a payout for a vacation that the deceit never took. Well, if the Briscoe argument was correct, wouldn't that also require the employer to maintain insurance, health insurance or whatever other benefits were normally provided to an employee during this accrued vacation plan? If somebody were — under that argument, if somebody had a year-plus accrued vacation, which under collective bargain agreements and more we've seen, this Court's seen, because I've read cases where people come in arguing about whether they — accrued vacation means X or Y under the collective bargain agreement. The fact is the employer ended benefits at the end of the month for the vision and the medical, ended the coverage under the terms of the plan on the date of the termination and did not continue an employer-employee type of relationship for an unknown period of time for an accrued vacation. Moreover, Mr. Briscoe, it wasn't a negotiated situation where, okay, look, you know, we need to let you go, but why don't you take your vacation time, then come back at the end of the month, clean out your workroom, and, you know, then the end of the month will be your last payday. No. This was — If that's the Williams case in your mind? If that was — if the planned fiduciary employer had provided that the employment was during the time — I'm sorry, the vacation was during the time of employment, the vacation was approved, and then thereafter, the termination date, then it would be a different story. But here it did not. The appellant argues that these are not two different contingencies. These are clearly two different contingencies. When you terminate it, you know it. You're terminated. Have you ever been terminated? I have. You're done. If you're on a leave of absence, because for a variety of reasons people go on leave of absence, your coverage can end, and then if you come back, your coverage begins again when you're active at work. But it's not designed — and you can't — the terms of the plan are not ambiguous. Moreover, the very fact that somebody is paying an accrued pay for vacation time that you're not — have not taken because they owe it, because the employer owes it, can't all of a sudden mean, well, OK, the policyholder, the employer approved the vacation. That's not logical either. It defies logic. It defies just a straightforward reading of the terms of the plan. MetLife is a fiduciary. It has an obligation to adjudicate claims for benefits pursuant to the terms of the plan. It followed the terms of the plan. The employer fiduciary more than a year later says not employed, premiums ended. There's a paycheck where they took premiums for a period out of his check when he was employed for a pay period from May 13th, Sunday, Monday, Tuesday, Wednesday he's terminated, for the pay period from May 13th to May 26th. They took a premium out on a June 1st check retroactive for that period, including time when he was employed. But the employer certified a year plus later that they had not paid premium to MetLife. They stopped premium on the date of termination, May 13th. MetLife can rely upon that. On the issue of the SBD, just briefly, MetLife is not the plan administrator. The employer is the plan administrator. Any perceived deficits in the summary plan description, which I don't agree, we don't agree that they're deficits, but any perceived deficits was with the employer as the fiduciary. Appellant settled out on that, so that MetLife adjudicates pursuant to the terms of the plan. The plan document is that document, and we interpreted it pursuant to those terms. If you have any questions, I'll be happy to answer them. If not, I'll be happy to move. All right, thank you. I think we've got your argument. All right, thank you very much. Just quickly on the question of claim exhaustion, that's all ERISA requires is claim exhaustion, and it does not require theory or issue or argument exhaustion. All that's set out in the record on appeal at 2633-36 in one of my trial court briefs, and briefly in a footnote in my brief. The employee-employee relationship, the defendant says, did not continue. Well, again, when something is deemed to be something, it is a legal fiction. The employer-employee relationship is deemed to continue over weekends, over holidays, and over employer-approved vacation. So they want to take this all very literally. How was this an employer-approved vacation? He didn't ask for vacation. He didn't take vacation. They paid for it. They wouldn't pay for it. They calculated his final employment by giving him his pay for the days that he did not take vacation. Well, I think that, again, the phrase, I think it was approved vacation, I think it was fictitious vacation, just like the weekends and everything else, and I think it could be applied. You have used Ulysses as an analogy. I think the world, according to Garp, would be a better one. Well, I appreciate that. And I believe when the defendant was up, he said something about premiums being paid or something. If the Court is concerned about the premium issue, which was really not briefed by them either, I think you should look very carefully at the record to see what evidence there is of premiums actually being paid. I want to point out a couple other things regarding these cancellation arguments, that the policy was canceled. You know, if we're on to what was raised and when it was raised, MetLife's denial letters and their amended answer, neither of those state that the coverage was canceled. They always say that the coverage ended pursuant to the terms of the policy. So this would be a new post hoc argument under Robertson, Vietna Life Insurance, 443F3, 389. Courts can consider only the actual basis on which the administrator denied the claim, not its post hoc rationalization. Here again, I think the evidence was in, the argument was made, maybe not terribly articulately, but it was made, and MetLife ignored the whole argument about vacation. So, to go on about their evidence of cancellation, in the Napoli case, there was an absence of positive evidence. In this case, we've got a much stronger case because we can show on the cancellation issue that there was no notice of cancellation, that Mr. Burgandy said the policy had lapsed, and the denials and the answers I've already noted, they don't claim cancellation. The certificate and the policy do not provide for cancellation. The collection of premiums clearly continued after his death. I mean, if they can't, if he can't be on vacation after he's terminated, how can they continue to collect premiums for him, or that he will pay for the period after he's deceased? So, and MetLife, there's no record of premium refund anywhere, and so I think that all of the evidence about cancellation is not substantial evidence, and the Court should not give it any credence. Thank you very much. Sotomayor, did you settle with the employer? Did you settle with the employer? Was there a claimant? No. Well, we dismissed the employer because we thought that this was the better route for us to proceed. Okay. Thank you, sir. All right, that completes our docket for today. We'll be at recess until 9 o'clock tomorrow. Thank you.